Colorado Court of Appeals Opinions || September 24, 2015


Colorado Court of Appeals -- September 24, 2015
2015 COA 136. No. 14CA1554. People in the Interest of D.I.



 Â  

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 136

 
 



 Court of Appeals No. 14CA1554
 City and County of Denver Juvenile District Court No. 14JD131
 Honorable Laurie Clark, Judge


 The People of the State of Colorado,

 Plaintiff-Appellee,

 In the Interest of D.I.,

 Juvenile-Appellant.


 JUDGMENT AFFIRMED AND ORDER VACATED

 Division III
 Opinion by JUDGE LICHTENSTEIN
 Dailey and Fox, JJ., concur

 Announced September 24, 2015


 Cynthia H. Coffman, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Hardy & Juba LLC, Michael S. Juba, Denver, Colorado, for Juvenile-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â  This appeal concerns liability for restitution when the actorâs conduct occurs after, and separate from, the initial criminal acts that proximately caused the victimâs damages.

 Â¶2Â Â Â Â Â Â Â  D.I. appeals his juvenile adjudication for second degree aggravated motor vehicle theft and possession of burglary tools. He also appeals the restitution order. We affirm the judgment of conviction but vacate the restitution order.

 I. Background

 Â¶3Â Â Â Â Â Â Â  A police officer responded to a dispatch of someone recklessly driving a car that had been reported stolen two days earlier. The officer located and followed the car, which stopped in an alley. When the sole occupant, D.I., got out of the driverâs side of the car, the officer arrested him.

 Â¶4Â Â Â Â Â Â Â  After D.I. was in custody, officers looked inside the car and saw that the ignition had been damaged, or âpunched,â so that it could be started with a screwdriver. They also saw a screwdriver on or near the driverâs seat. They did not find any keys inside the car.

 Â¶5Â Â Â Â Â Â Â  D.I. was charged with theft, first degree aggravated motor vehicle theft, and possession of burglary tools (the screwdriver). Following a bench trial, the juvenile court adjudicated D.I. forÂ committing the crimes of second degree aggravated motor vehicle theft and possession of burglary tools. It dismissed the theft charge as a lesser included offense of aggravated motor vehicle theft. The court sentenced D.I. to âup to two years of probation or further court order.â It ordered D.I. to pay $3067.91 in restitution to repair the damage to the car.

 Â¶6Â Â Â Â Â Â Â  On appeal, D.I. contends that the trial court abused its discretion when it ordered him to pay restitution because the court had found that the prosecution presented âno evidenceâ that he was the person who damaged the car. He also contends that the trial court erroneously admitted unendorsed expert testimony from a lay witness at trial when it allowed an officer to testify about the use of screwdrivers to operate stolen vehicles.

 II. Proximate Cause

 Â¶7Â Â Â Â Â Â Â  D.I. contends that the trial court abused its discretion when it ordered restitution because there was no evidence that he proximately caused the damage to the car. Because, according to the courtâs findings, the damage to the car was inflicted two days prior to the time the court found that D.I. exercised control over the car, we conclude that the restitution order must be vacated.

 A. Standard of Review and Applicable Law

 Â¶8Â Â Â Â Â Â Â  A trial court has broad discretion to determine the terms and conditions of a restitution order, People v. Rivera, 250 P.3d 1272, 1274 (Colo. App. 2010), and thus we review a restitution order under an abuse of discretion standard, see People v. Maestas, 2014 COA 139M, Â¶11; People v. Henson, 2013 COA 36, Â¶9.

 Â¶9Â Â Â Â Â Â Â  Section 19-2-918, C.R.S. 2015, the juvenile restitution statute, authorizes a court to order a juvenile who is adjudicated a juvenile delinquent to make restitution to the victim, â[i]f the court finds that the juvenile . . . has damaged the personal or real property of a victim . . . .â It authorizes the court to order that the juvenile make restitution to the victim âin the same manner as required by the restitution statutes governing adult criminal prosecutions.â People in Interest of D.S.L., 134 P.3d 522, 527 (Colo. App. 2006); Â§ 19-2Â­918. The restitution statute governing adult criminal prosecutions provides that restitution includes âany pecuniary loss suffered by a victim,â including âall out-of-pocket expenses . . . and other losses or injuries proximately caused by an offenderâs conduct.â Â§ 18-1.3Â­602(3)(a), C.R.S. 2015. We liberally construe the restitution statute to accomplish its goal of making victims whole for the harmsÂ suffered as the result of a defendantâs criminal conduct. See Roberts v. People, 130 P.3d 1005, 1009 (Colo. 2006); Rivera, 250 P.3d at 1274.

 Â¶10Â Â Â Â Â Â Â  â[A] co-defendant is jointly responsible for restitution when he is also a complicitor in the crime.â People v. Fichtner, 869 P.2d 539, 540, 542 (Colo. 1994) (construing a former version of a restitution statute requiring a defendant to make restitution âto the victim of his conductâ), superseded by statute as stated in People v. Cardenas, 262 P.3d 913 (Colo. App. 2011).

 Â¶11Â Â Â Â Â Â Â  The People must establish by a preponderance of the evidence both that the victimâs losses were proximately caused by the defendant and the amount of restitution owed. Henson, Â¶11.

 B. Discussion

 Â¶12Â Â Â Â Â Â Â  The trial court ordered D.I. to pay $3,067.91 in restitution for repairs to the car. The repairs included fixing the wiring and metal fixtures of the ignition column, re-keying the car, replacing the molding around the front passenger side fender, and replacing a missing gas cap. The court made the restitution award joint and several, should another defendant be convicted.Â Â 

 Â¶13Â Â Â Â Â Â Â  D.I. contends that this restitution order must be vacated because the damage to the car was not proximately caused by his conduct. We agree.

 Â¶14Â Â Â Â Â Â Â  The court made two factual findings which are pertinent to the restitution order. First, in declining to find D.I. guilty of conduct constituting first degree aggravated motor vehicle theft if committed by an adult, but entering a verdict only on second degree aggravated motor vehicle theft,[1] the court found that âthere was no evidence that [D.I.] created the damage that was in the car. He used that damage to his benefit but there is no evidence that he caused that damage.â See Â§ 18-4-409(2)(e), C.R.S. 2015. Second, in ruling on the restitution request, the court found that D.I. didÂ not have control of the car for more than an hour, and âat the very least was complicitâ in committing aggravated motor vehicle theft because he âwas driving a stolen vehicle, he knew he was driving a stolen vehicle, [and] he had tools to allow him to drive that stolen vehicle.â These findings exclude D.I. as having had any involvement in the same criminal act that resulted in the carâs damage.

 Â¶15Â Â Â Â Â Â Â  When codefendants are participants and complicitors in âthe same criminal acts,â each is responsible for the damage he or she caused and also for the damage caused by the other during the commission of the crime. See Fichtner, 869 P.2d at 543. A defendant may be ordered to pay restitution for losses that resulted from the conduct that was the basis of the defendantâs criminal conviction. People v. Brigner, 978 P.2d 163, 164 (Colo. App. 1999). And this obligation may extend to complicitors, who are equally culpable for the underlying conduct of the offense.

 Â¶16Â Â Â Â Â Â Â  Indeed, the restitution statute accounts for the restitution obligation of complicitors in making the victim whole. It provides that â[i]f more than one defendant owes restitution to the same victim for the same pecuniary loss, the orders for restitution shall be joint and several obligations of the defendants.â Â§ 18-1.3-603(5),Â C.R.S. 2015. But while a complicitor may be liable for restitution for the victimâs damages, the complicitorâs conduct must concern the same criminal acts that proximately caused the victimâs damages. Proximate cause in restitution claims is ââa cause which in natural and probable sequence produced the claimed injuryâ and âwithout which the claimed injury would not have been sustained.ââ People v. Clay, 74 P.3d 473, 475 (Colo. App. 2003) (quoting People v. Stewart, 55 P.3d 107, 116 (Colo. 2002)). A defendant is not required to pay restitution for damages that âdid not stem from the conduct that was the basis of the defendantâs conviction.â Rivera, 250 P.3d at 1274; Brigner, 978 P.2d at 164. â[M]ore than speculation is required in order for the defendant to bear responsibility for the injury.â Cumhuriyet v. People, 200 Colo. 466, 469, 615 P.2d 724, 736 (1980).

 Â¶17Â Â Â Â Â Â Â  In this case, the car was stolen two days before the police discovered D.I. in possession of the car. However, the court found âzero evidence that [D.I.] had control of the vehicle for more than an hour.â The court further found that there was no evidence that D.I. created the damage to the car. It found that he used the damage to his benefit, but there was no evidence that he caused the damage.Â 

 Â¶18Â Â Â Â Â Â Â  Based on these findings, the conduct underlying D.I.âs delinquency adjudication could not have been a proximate cause of the vehicleâs damage because it occurred after, and separate from, the initial theft and damage. Indeed, the conduct, as found by the court, included only D.I.âs subsequent possession of the stolen vehicle, possession of a screwdriver, and his knowledge that the car was stolen. And the court did not find that D.I.âs use of the screwdriver to operate the car caused or exacerbated the existing damage.

 Â¶19Â Â Â Â Â Â Â  In context, the trial courtâs finding that D.I. âat the very least was complicitâ is insufficient to support the restitution order. Although Fichtner held that a complicitor could be jointly responsible for restitution for damages caused by a codefendant, Fichtner is distinguishable because the court found in this case that D.I. was not complicit in the initial theft.

 Â¶20Â Â Â Â Â Â Â  In Fichtner, both Fichtner and his codefendant assaulted the victim and the victimâs wife and stepson, and during the course of the assault the codefendant shot the victimâs truck tire with a shotgun. Fichtner, 869 P.2d at 541. The supreme court held that Fichtner was liable because he and his codefendant âwereÂ participants and complicitors in the same criminal acts.â Id. at 543. In this case, however, there was no evidence that D.I. participated in the initial theft that caused the damage to the vehicle. The person or persons who stole the victimâs car on the night of February 16th are unknown, and no other defendant has been charged with this theft.

 Â¶21Â Â Â Â Â Â Â  Furthermore, the prosecution did not establish any link between D.I.âs conduct and the damage to the car. Indeed, the court made express findings that there was no evidence that D.I. caused the damage to the car or had possession of it for more than one hour. Because D.I. did not participate in the initial theft, D.I. was not liable for restitution as a complicitor for the initial theft that caused the damage. See People v. Randolph, 852 P.2d 1282, 1284 (Colo. App. 1992) (reversing restitution order where âthe trial courtâs decision to divide the cost of the loss between the defendant and the individual who initially stole the pickup truck was based on nothing more than speculation that the defendant took one-half of the [personal] items [missing from the truck]â).

 Â¶22Â Â Â Â Â Â Â  Although Cumhuriyet did not address the issue of complicitor liability for restitution, it is illuminating regarding the sufficiency ofÂ evidence and proximate cause requirements. In Cumhuriyet, the defendant was arrested for and pleaded guilty to misdemeanor theft after she attempted to pay for a coat at a store with a stolen credit card while shopping with another woman. Cumhuriyet, 200 Colo. at 467-68, 615 P.2d at 724-25. The presentence report showed that the stolen credit card had been used earlier that day to purchase clothing from another store in a different location. The trial court ordered the defendant to pay restitution for half the amount of the earlier charge as a condition of probation. The supreme court reversed, stating that âthere [was] no indication that the defendant made the purchase at the [other] store,â and â[w]ithout more evidence showing the defendantâs responsibility for the injury,â the restitution order was improper. Id. at 469, 615 P.2d at 726.

 Â¶23Â Â Â Â Â Â Â  Similar to Cumhuriyet, the trial courtâs findings in this case show that there is no evidence that D.I. was involved in the initial theft, where the damage to the car originally occurred. Although police found him in possession of the stolen car two days later (similar to the Cumhuriyet defendantâs subsequent arrest with the stolen credit card), this evidence alone is insufficient to show thatÂ D.I. is responsible, even as a complicitor, for the earlier damage to the vehicle.

 Â¶24Â Â Â Â Â Â Â  Accordingly, we conclude that the trial courtâs restitution award must be vacated.

 III. Police Officerâs Testimony

 Â¶25Â Â Â Â Â Â Â  D.I. next contends that the trial court erroneously admitted unendorsed expert testimony from a lay witness when it allowed a police officer to testify at trial about the use of screwdrivers to operate stolen vehicles. Even assuming that some of the officerâs testimony should not have been admitted, we conclude that any error was harmless.

 A. Standard of Review and Applicable Law

 Â¶26Â Â Â Â Â Â Â  Whether to admit evidence is a matter committed to the discretion of the trial court, whose ruling will not be disturbed unless it was manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law. People v. Casias, 2012 COA 117, Â¶29; People v. Welsh, 80 P.3d 296, 304 (Colo. 2003).

 Â¶27Â Â Â Â Â Â Â  A party may present relevant evidence through the testimony of expert witnesses or lay witnesses in accordance with the standards set forth in CRE 701 and 702.Â 

 Â¶28Â Â Â Â Â Â Â  Under CRE 701, a witness not qualified as an expert may offer opinion testimony only if it is rationally based on the perception of the witness, helpful to a clear understanding of the witnessâs testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of CRE 702. See People v. Rincon, 140 P.3d 976, 982 (Colo. App. 2005).

 Â¶29Â Â Â Â Â Â Â  Police officers regularly and appropriately offer lay opinion testimony under CRE 701 based on their perceptions and experiences. Stewart, 55 P.3d at 123; People v. Rhodus, 2012 COA 127, Â¶36. It is only when a police officerâs testimony requires the application of, or reliance on, specialized skills or training that the officer must be qualified as an expert under CRE 702 before offering such testimony. Stewart, 55 P.3d at 123; People v. Conyac, 2014 COA 8M, Â¶58. If, however, âan officerâs opinion could be reached by an ordinary person based on a process of reasoning familiar in everyday life, it is admissible as lay opinion evidence.â People v. Mollaun, 194 P.3d 411, 419 (Colo. App. 2008).

 B. Discussion

 Â¶30Â Â Â Â Â Â Â  D.I. challenges the admission of the police officerâs testimony at trial that described the method criminals use to steal cars of the same make and model as the stolen car in this case. Specifically, the officer testified that

 [t]he panel right behind the driverâs window, where the doorframe comes together, you can pop that off. You can easily reach in, a tool, any type of tool, wire, screwdriver, whatever, and pop the latch up. It gets you into the car. You can also lift the handle, put a piece of wire in under the handle, grab the cable where the, the connector that goes between the latch and the door handle . . . on it, it will open it. You can smash the window. You can punch the lock. You can use a shaved key.

 . . .

 Once youâre inside, you have a couple of options. If youâre skilled you can hotwire it under the dash. You can pull the ignition. You can pull that out with a screwdriver, a dent puller, you can pull it out with a pair of pliers and a hammer. You can grab where the channel locks, twist it, break it out and then all you do once the ignition cylinderâs out put a screwdriver in. Thereâll be a slot, you hit the release, turn the screwdriver, and the car starts, and the wheel is unlocked.

 The officer then testified that he had seen âscrewdrivers used to punch the ignitionâ in about seventy percent of the cars heÂ recovered as stolen, and testified that when an âignition is punched . . . that means that thereâs no key required to turn the lock cylinder to start it. You merely put the screwdriver in, fit it into the slot, turn it forward, car starts.â The officer based this testimony on his observations and experience with his recovery of several hundred of these stolen cars, his twenty-nine years as a police officer, and his âmyriad of training regarding theft recovery, types of cars, how theyâre stolen, . . . [and] which ones are easier to get into and how to start them.â

 Â¶31Â Â Â Â Â Â Â  D.I. does not dispute that the officerâs testimony about his observations of the carâs ignition, steering wheel, and screwdriver were proper lay opinion testimony. He contends, however, that the officer testified about technical knowledge that is outside the experience of an ordinary person: the specific ways in which this particular make and model of car can be stolen and how to access and operate a car without its keys. See Mollaun, 194 P.3d at 419; People v. Veren, 140 P.3d 131, 137 (Colo. App. 2005) (in assessing whether testimony is proper lay opinion, âcourts consider whether ordinary citizens can be expected to know certain information or to have had certain experiencesâ).

 Â¶32Â Â Â Â Â Â Â  To the extent that the officerâs testimony can be construed as including technical knowledge derived from his specialized training, and not simply his experiences and observations as a police officer, we conclude that the admission of this testimony, even if erroneous, was harmless.

 Â¶33Â Â Â Â Â Â Â  âIf a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless.â Veren, 140 P.3d at 140.

 Â¶34Â Â Â Â Â Â Â  At trial, D.I. was found alone in the car, with no car keys, with the ignition âpunchedâ and a screwdriver in the car. A second officer â whose testimony is not challenged on appeal â testified that â[b]ased on my experience and over the years of being a police officer, a screwdriver, one of which I saw in the seat of the driverâs seat, could definitely be used to get the engine started on that vehicle.â Similarly, the victim also testified that, when he received his car, the âignition column was so mangledâ and there was a ârusty screwdriver that was jammed in, just kind of sticking up . . . [s]o clearly somebody had used that . . . to turn the ignition.â Therefore, other evidence allowed the trial court to find that D.I. likely used the screwdriver to operate the car. In light of this evidence in the record, any impropriety in the admission of the officerâs testimony did not have a substantial influence on the verdict or impair the fairness of the trial, and reversal is not warranted. Stewart, 55 P.3d at 124.

 IV. Conclusion

 Â¶35Â Â Â Â Â Â Â  The judgment of conviction is affirmed and the restitution order is vacated.

 JUDGE DAILEY and JUDGE FOX concur.


 Â  

 [1] Section 18-4-409(4), C.R.S. 2015, states â[a] person commits aggravated motor vehicle theft in the second degree if he or she knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception and if none of the aggravating factors in subsection (2) of this section are present.â The court made specific findings that there was no evidence supporting any of the aggravating factors. The statutory aggravating factors pertinent to the courtâs restitution order are â[r]etains possession or control of the motor vehicle for more than twenty-four hours,â and â[c]auses five hundred dollars or more property damage, including but not limited to property damage of the motor vehicle involved, in the course of obtaining control over or in the exercise of control over the motor vehicle.â Â§ 18-4-409(2)(a), (e).

 Â  




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || September 24, 2015


Back