**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Glenn RANDOLPH, Defendant–Appellant.**

**No. 91CA0795.**

Colorado Court of Appeals, Div. IV.

Aug. 27, 1992.

Rehearing Denied Sept. 24, 1992.

---

[*] Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Twining, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, David M. Furman, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Glenn Randolph, appeals the order of the trial court directing him to pay restitution after he had been convicted of theft by receiving and had been sentenced to a community correction's facility. We affirm in part and reverse in part.

A pickup truck, which contained items of personal property, was stolen from a Westminster mall and was given to defendant to drive. Four days later, the police recovered the truck at defendant's apartment. The body of the truck was damaged, and a number of items of personal property were missing from the truck. Defendant entered a plea of guilty to theft by receiving of the truck, a class 4 felony; he was not charged with any offense relating to the other property, nor was there any evidence that he ever came into possession of such property. He was sentenced to eight years in a community corrections facility. Later, he was ordered to pay the victim for the truck damage, plus one-half the value of items missing from the truck, at the rate of $61 per month.

Defendant challenges the restitution order. Although he does not dispute his liability with respect to the damage to the body of the truck, he asserts that he did not take any of the items of personal property from the truck and, thus, should not be responsible for any restitution payments for them.

### I.

Defendant contends that there was insufficient evidence to support the court's conclusion that he owed $2,215.68 as one-half the value of the items of missing property. We agree with him upon this issue.

Payment of restitution is authorized only for the actual pecuniary damage the victim sustains as a direct result of a criminal defendant's conduct. *People v. Deadmond*, 683 P.2d 763 (Colo.1984). The People bear the burden of proving that the restitution sought is attributable to a defendant's conduct, *People v. Engel*, 746 P.2d 60 (Colo.App.1987), and more than speculation is required in order for a defendant to be ordered to bear responsibility for the victim's loss. *Cumhuriyet v. People*, 200 Colo. 466, 615 P.2d 724 (1980).

Here, no evidence was presented by the People to establish any link between the defendant's conduct and the missing items of personal property. Hence, the trial court's decision to divide the cost of the loss between the defendant and the individual who initially stole the pickup truck was based on nothing more than speculation that the defendant took one-half of the items.

The record is devoid of evidence establishing defendant's involvement in the theft of the personal property, and therefore, that portion of the order directing defendant to pay restitution for one-half the missing personal property must be reversed.

### II.

Defendant further contends that the trial court exceeded its authority in ordering him to make monthly payments in an amount fixed by the court. We also agree with this contention.

Under § 17–27–107(1), C.R.S. (1991 Cum. Supp.), which is entitled "Restitution—contract provisions," it is provided that:

A sentence, assignment, or transfer of an offender to a community correctional facility or program, whether operated by an governmental or nongovernmental agency, *shall be conditioned on the entrance of the program participant into a contract or agreement with the agency in accordance with the applicable provisions of sections 17–2–201 and 17–26–128 and article 28 of this title. Such contracts or agreements shall apply to, but are not limited to, offenders directly sentenced to a community correctional facility or program* and to offenders transferred to such a facility or program from the department. Such contracts or agreements may further provide for a percentage or amount of money received from employment of the offender to be set aside to pay family support, if appropriate, to establish a savings account or fund to be utilized by the program participant upon release, and to be used for any other requirements which the parties deem necessary, including reimbursement to the appropriate governmental or nongovernmental agency to help defray the cost of residential services. (emphasis added)

When considering a statute, our task is to ascertain and give effect to the intent of the General Assembly. In so doing, a court should look first to the language of the statute, giving words and phrases their plain and ordinary meaning. *People v. District Court*, 713 P.2d 918 (Colo.1986).

To effectuate the legislative intent, a statute must be considered and read as a whole. The statute, if possible, should be interpreted in such a manner that all of its parts are given a consistent, harmonious, and sensible effect. *People v. District Court, supra.*

The plain language of § 17–27–107(1) requires a defendant directly sentenced to a community corrections facility to agree to

the terms and conditions of a contract, which contract must be "in accordance with the applicable provisions of sections 17–2–201 and 17–26–128 and article 28 of this title."

Section 17–2–201, C.R.S. (1986 Repl.Vol. 8A) generally creates and empowers the State Board of Parole. With respect to restitution, § 17–2–201(5)(c)(I), C.R.S. (1986 Repl.Vol. 8A) directs the State Board of Parole, as a condition of parole, to:

provide that the offender make restitution to the victim of his conduct or a member of the victim's immediate family for the actual damages which were sustained. Such restitution shall be ordered by the board as a condition of parole. The amount of such restitution shall be as determined by the court pursuant to section 16–11–102(4), C.R.S. . . . *The Board shall fix the manner and time of performance.* (emphasis supplied)

Section 16–11–102(4), C.R.S. (1986 Repl. Vol. 8A) requires that the trial court set the amount of restitution at the time a defendant is sentenced.

Section 17–26–128(5)(a), C.R.S. (1986 Repl.Vol. 8A) states that, with respect to an individual serving a sentence in a county jail, or one who has been placed in home detention and is in a work release program, the court shall set *both* the "amount" of restitution to be paid to his or her victim as well as the "manner of performance."

Finally, Title 17, Article 28, entitled "Restitution to Victims of Crime," contains two sections. Section 17–28–101, C.R.S. (1986 Repl.Vol. 8A) recognizes the hardship victims of crime endure and declares that "persons found guilty of causing such suffering should be under a moral and legal obligation to make adequate restitution to those injured by their conduct." That statute then provides that:

The purpose of this article is to encourage the establishment of programs to provide for restitution to victims of crime by offenders who are sentenced, or who have been released on parole, or who are being held in local correctional and detention facilities. It is the intent of the general assembly that restitution be uti-

lized wherever feasible to restore losses to the victims of crime and to aid the offender in reintegration as a productive member of society.

The second section of this article, § 17–28–102, C.R.S. (1991 Cum.Supp.), provides that:

The [Department of Corrections] shall, as a means of assisting in the rehabilitation of persons committed to its care, *including persons placed in community correctional facilities or programs*, establish programs and procedures whereby such persons may contribute toward restitution of those persons injured as a consequence of their criminal acts. The [Department of Corrections] shall report to the general assembly its progress in implementing this article.

In interpreting these various directives, and in an effort to harmonize them, we discern two common elements.

First, the trial court always fixes the total amount of restitution that a defendant will be required to pay his or her victim. The trial court's authority to do so is specifically granted by § 16–11–102(4), and is reinforced, either tacitly or implicitly, in all the statutes referred to in § 17–27–107.

Second, in all the statutes referred to in § 17–27–107, a specific institution is directed to establish the procedures that a defendant is to follow in paying the amount of restitution set by the court. Thus, if a defendant is subject to the jurisdiction of the Board of Parole, that board sets the procedures. Section 17–2–201(5)(c)(I). If a defendant is sentenced to the county jail and granted a work release permit, the court establishes the repayment procedures. Section 17–27–128(5)(a). And, if the defendant has been committed to the care of the Department of Corrections and is then placed in a community corrections facility, the Department of Corrections makes this determination. Section 17–28–102.

Hence, when a community corrections facility drafts the terms and conditions of the contract mandated by the statute, it must

always incorporate the total amount of the restitution as established by the trial court. Further, in those situations in which another institution has been directed to set the procedures to be followed, the community corrections facility must also incorporate these provisions into the contract.

However, when a defendant is *directly sentenced* to community corrections, none of the circumstances referred to in § 17–27–107 exist; that is, the defendant has not been placed under the jurisdiction of the Department of Corrections or under the jurisdiction of the Board of Parole, and he is not involved in a work release program.

■ Consequently, we conclude that, if an individual has been directly sentenced to community corrections and is not under the jurisdiction of one of the institutions enumerated in § 17–27–107, the decision regarding the procedure to be followed in paying restitution is to be made by that institution that is empowered to draft the terms and conditions of the restitution contract, *i.e.*, the community corrections facility.

Various statutes place the responsibility for establishing the method of paying restitution upon different institutions, depending upon which has the primary responsibility of overseeing a defendant. Consistent with this policy, a community corrections facility has been given the responsibility for entering into a contract with a defendant who has been directly sentenced to the facility, and that contract must address the subject of restitution. Hence, in such circumstances, it must be that facility that must assume that responsibility.

### III.

Defendant also challenges the fact that the trial court proceeded with the restitution hearing in his absence. But, in light of our previous conclusions, we do not address this issue.

That portion of the trial court's order determining the amount of restitution defendant owes for damage to the vehicle is affirmed. The remainder of its order is reversed.

JONES and DAVIDSON, JJ., concur.